IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAIRLEY GUILLORY, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-4377 |
| PF&B MANAGEMENT, LP d/b/a REEF RESTAURANT; PF&B MANAGEMENT GP, LLC; WILLIAM H. FLOYD, Individually and d/b/a REEF RESTAURANT; and BRIAN C. CASWELL, Individually and d/b/a REEF RESTAURANT, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants' Motion for Partial Summary Judgment (Doc. 40). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART, DENIED IN PART**.

### I. Case Background

This lawsuit concerns claims brought by Plaintiff, individually and on behalf of all other similarly situated individuals, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Texas Labor Code.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 38.

**A. Procedural History**

Plaintiff filed this lawsuit against Defendants on December 13, 2011, alleging willful violations of the FLSA.[2] Plaintiff filed an amended complaint on January 17, 2012, alleging FLSA pay violations under 29 U.S.C. §§ 206 and 207, failure to keep accurate records of hours worked by Plaintiff and others under § 211(c), and retaliation under § 215(a)(3).[3] Plaintiff also asserted a claim for violation of the Texas Labor Code, and collective action allegations with respect to Defendants' alleged failure to pay minimum wage and overtime rates for all hours worked over forty under the FLSA.[4]

On June 1, 2012, Plaintiff moved for conditional class certification.[5] Approximately ten weeks later, on August 17, 2012, Defendants filed the pending motion for partial summary judgment, to which Plaintiff responded on September 14, 2012.[6] Subsequently, the court conditionally certified a class composed of all current and former waiters and waitresses employed by Defendants at Reef Restaurant, for whom Defendants took a tip credit in the past three

---

[2] See Doc. 1, Pl.'s Compl.

[3] See Doc. 14, Pl.'s 1st Am. Compl.

[4] See id. ¶¶ 43-49, 52.

[5] See Doc. 33, Pl.'s Mot. to Certify Class; see also Doc. 36, Defs.' Resp. to Pl.'s Mot. to Certify Class; Doc. 37, Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. to Certify Class.

[6] See Doc. 40, Defs.' Mot. for Partial Summ. J.; Doc. 46, Pl.'s Resp. to Defs.' Mot. for Partial Summ. J.

years.[7]

**B. Factual History**

Defendants employed Plaintiff as a waiter and bartender at Reef Restaurant from April 2006 through December 2011.[8] Plaintiff was compensated at a rate of $2.13 per hour plus tips when waiting tables and $5.25 per hour plus tips when working as a bartender.[9] Pursuant to a written notice distributed to each new employee in a Welcome Packet, Plaintiff was required to participate in a tip pool along with other waiters, bartenders, and employees who regularly received tips.[10] Tipped employees, including Plaintiff, contributed 2.5% of their net sales for lunch shifts and 5% of their net sales for dinner shifts, both of which excluded taxes and tips.[11] Defendants also withdrew 0.2% of their employees' net sales in order to offset a portion of credit card processing fees.[12] In order to be "tipped-out," or paid his earned tips, by a manager at

---

[7] See Doc. 45, Mem. & Recommendation Certifying Class, p. 15; Doc. 50, Or. Dated Oct. 22, 2012.

[8] See Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Aff., ¶ 3.

[9] See id. ¶ 8; Doc. 40-2, Ex. B to Defs.' Mot. for Partial Summ. J., Pl.'s Payroll Recs.

[10] See Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶¶ 7-8; Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Aff., ¶ 11.

[11] See Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 7; Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Aff., ¶ 10

[12] See Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 7.

3

the end of each shift, Plaintiff produced a signed printout "showing the sales made and tips received including the amount that went into the tip pool for that day."[13]

On or about December 16, 2011, three days after this lawsuit was filed, manager William Floyd ("Floyd") asked Plaintiff about his filing this lawsuit.[14] According to Plaintiff, Floyd also said, "You're not going to work here anymore and you're not going to work anywhere else in town."[15] Plaintiff then departed without completing his shift.[16] Defendants claim that Plaintiff abandoned his job "after becoming belligerent and insubordinate with the owners and management on December 16, 2011."[17] As he was leaving the restaurant's premises, Plaintiff encountered Brian Caswell ("Caswell") and told Caswell that Floyd was the intended target of the lawsuit and that Caswell was "not even supposed to be on the pleadings."[18] Following the events of December 16, 2011, the parties understood that Plaintiff's employment with Defendants was

---

[13] Id. ¶ 8.

[14] See Doc. 46-9, Ex. I to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Depo., p. 31.

[15] Id. p. 17.

[16] See id. pp. 16-17; see also Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 10.

[17] Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 10

[18] See Doc. 46-9, Ex. I to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Depo., p. 39.

4

over.[19]

Three days later, on December 19, 2011, Plaintiff returned to Reef Restaurant and spoke to Floyd, as well as other management representatives, about his employment status and about receiving his paycheck.[20] Plaintiff claims that a manager from another of Defendants' restaurants, who was present at Reef Restaurant on December 19, told him, "You don't work here anymore. You need to leave the building."[21] Plaintiff did not return to Reef Restaurant, in any capacity, after December 19, 2011.[22]

## II. Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet

---

[19] See Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 10; Doc. 46-9, Ex. I to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Depo., p. 17.

[20] See Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 10; Doc. 46-9, Ex. I to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Depo., pp. 14, 18-19, 24-30, 38-41.

[21] Doc. 46-9, Ex. I to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Depo., p. 26.

[22] See id. p. 31.

Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co.

6

v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Defendants move for summary judgment on Plaintiff's FLSA and retaliation claims on the grounds that: (1) Defendants' tip pool is compliant with the FLSA and therefore it is entitled to a "tip credit;" (2) Plaintiff cannot establish a prima facie case of FLSA retaliation; and (3) Plaintiff cannot establish that Defendants' articulated reason for Plaintiff's alleged termination was a pretext for FLSA discrimination. The court considers the merits of

7

Defendants' arguments.

**A. <u>Tip Credit</u>**

Under the FLSA, Plaintiff, as a "tipped employee,"[23] must be paid (1) an amount equal to the cash wage paid to tipped employees on August 20, 1996, which the parties agree is $2.13 per hour,[24] and (2) an additional amount of tips received by the employee equal to the difference between $2.13 and the minimum wage. 29 U.S.C. § 203(m). In other words, the employer may take credit for an employee's tips to make up the difference between the cash wage of $2.13 it pays and the minimum wage it owes its wait staff. The employer bears the burden of proving its entitlement to a tip credit. <u>Barcellona v. Tiffany English Pub, Inc.</u>, 597 F.2d 464, 467 (5th Cir. 1979) ("On May 1, 1974, the Act was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the fifty percent tip credit.").

This tip credit is not automatic. An employer may take the tip credit only if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips; and (4) ensures that the cash wage plus the tip credit equal at least

---

[23] The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The parties do not contest that Plaintiff is a "tipped employee" for purposes of the FLSA.

[24] On August 20, 1996, the minimum wage was $4.25 per hour. The applicable tip credit available at that time was no more than one half of the minimum wage. <u>See</u> Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755, 1928-29 (1996).

the minimum wage each week.  See 29 U.S.C. § 203(m).  Regarding the third element, an employer may institute a "tip pool" to distribute tips among employees who customarily and regularly receive tips without running afoul of the tip-credit provision.  29 U.S.C. § 203(m).

Here, Defendants contend that they implemented a valid tip pool and are entitled to take a tip credit.  In opposition, Plaintiff argues that Defendants have not met their burden of proving compliance with 29 U.S.C. § 203(m).[25]  Specifically, Plaintiff claims that Defendants did not properly notify Plaintiff and other tipped employees about the tip pool and that management improperly participated in the tip pool, rendering the tip pool arrangement invalid.[26]  Therefore, Plaintiff asserts, Defendants cannot claim a tip credit against their obligation to pay the minimum wage under the FLSA.  The court addresses the parties' claims.

**1. Notifying Employees About the FLSA's Tip Provisions**

Courts in this circuit have determined that, in order for an

---

[25] Plaintiff also argued that Defendants waived their entitlement to a tip credit because they failed to assert the entitlement as an affirmative defense in their pleadings. Defendants have since remedied this defect in their pleadings. See Doc. 59, Defs.' 1st Am. Ans., ¶ 58; see also Doc. 51, Defs.' Mot. for Leave to File Am. Ans.; Doc. 53, Pl.'s Resp. in Opp'n to Defs.' Mot. for Leave to File Am. Ans.; Doc. 58, Or. Dated Jan. 22, 2013. Plaintiff's argument on this issue is therefore moot.

[26] It is undisputed that Defendants paid its servers an hourly rate of at least $2.13 per hour. See Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., ¶ 8; Doc. 40-2, Ex. B to Defs.' Mot. for Partial Summ. J., Payroll Recs. The evidence thus establishes the first element for an employer to take a tip credit. See 29 U.S.C. § 203(m).

9

employer to adequately inform its employees about the FLSA's tip credit provisions under § 203(m), the employer "must at a minimum inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation." <u>Gustavus v. Cazos, Inc.</u>, 774 F. Supp. 2d 856, 858 (S.D. Tex. 2011) (quoting <u>Kilgore v. Outback Steakhouse of Fla., Inc.</u>, 160 F.3d 294, 298 (6th Cir. 1998)) (internal quotations omitted); <u>see</u> <u>Bernal v. Vankar Enters., Inc.</u>, 579 F. Supp. 2d 804, 809 (W.D. Tex. 2008) (quoting 29 U.S.C. § 203(m)). An employer need not, however, provide its employees with a detailed explanation of the tip credit in order to satisfy § 203(m). <u>See</u> <u>Gustavus</u>, 774 F. Supp. 2d at 858.

In order to show that they informed Plaintiff and others about their intent to take credit for tips to satisfy their minimum wage obligation, Defendants direct the court's attention to Floyd's affidavit testimony. Floyd testified that, upon beginning employment with Defendants, each new employee was provided with a Welcome Packet that "informed [Defendants'] employees, including [Plaintiff] and the other plaintiffs, in writing that they would be participating in a tip pool."[27]

Supplementing this testimony, Defendants provided a copy off their Welcome Packet. The Welcome Packet included descriptions of Defendants' policies, as well as acknowledgments and agreements

---

[27] Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 8.

requiring the signature of the new employee. Among these acknowledgments was the "Employee Tip Credit Acknowledgment," which reads, in relevant part, as follows:

> In accordance with the [FLSA], all tipped employees (e.g. Servers) and all employees who customarily and regularly receive tips (e.g. Door Hosts, Bussers, and Service Bartenders) shall receive a base hourly rate of at least $2.13/hr.
>
> Servers and Bartenders receive tips directly from Guests which shall be credited toward their total hourly rate to equal at least the minimum hourly wage as set by the Federal Wage and Hour Law.
>
> A portion of tips received by Servers shall be allocated to a "tip pool" which shall be used as a credit toward the total hourly rate of employees who customarily and regularly receive tips (e.g. door hosts, bussers and service bartenders) to equal at least the minimum hourly wage as set by the Federal Wage and Hour Law.[28]

Also included in the Welcome Packet was a section entitled "Tip Reporting Agreement," under which the employee signed an acknowledgment that "tips will be used as credit against the minimum wage as permitted by [§ 203(m) of the FLSA]" and that "tips received by all directly tipped employees (e.g. servers) are subject to mandatory percentage contribution to a tip pool as permitted by [§ 203(m) of the FLSA]."[29] Defendants' evidence shows that Defendants' employees were notified, in writing, about Defendants' intention to take a tip credit.

---

[28] Doc. 40-4, Ex. D to Defs.' Mot. for Partial Summ. J., Welcome Packet.

[29] Id.

11

In response to Defendants' evidence, Plaintiff points to his affidavit testimony, as well as the affidavit testimony of other employees, which reads as follows:

> I do not recall ever be[ing] notified (i) that my employer intended to take a tip credit; (ii) of the amount of the tip credit; (iii) of the direct wages I was supposed to receive; (iv) that the tip credit cannot exceed the actual tips received; and (v) that all tips received by me could be retained unless I was required to participate in a valid tip pool limited to other employees who customarily and regularly receive tips.[30]

This evidence fails to raise a question of fact as to the issue of Defendants' informing Plaintiff and other employees about their intention to take a tip credit. Plaintiff's testimony that he does not recall receiving information about the FLSA's tip provisions does not contradict Defendants' competent summary judgment evidence that all new employees, including Plaintiff, received a Welcome Packet that informed Plaintiff of Defendants' intent to take a tip credit. See Gustavus, 774 F. Supp. 2d at 858. Accordingly, in the absence of competent summary judgment evidence rebutting Defendants' evidence on this issue, the court finds that Defendants have satisfied their § 203(m) burden of providing notice to their employees, including Plaintiff, about the FLSA's tip provisions.

**2. Validity of the Tip Pool**

---

[30] Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Aff., ¶ 7; Doc. 46-6, Ex. F to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Jose Mendoza's Aff., ¶ 7; Doc. 46-7, Ex. G to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Alejandro Guadarrama's Aff., ¶ 6; Doc. 46-8, Ex. H to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., ¶ 6.

Under § 203(m) of the FLSA, an employer may require customarily and regularly tipped employees to participate in a tip pool. 29 U.S.C. § 203(m). If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA. See Rudy v. Consol. Restaurant Cos., Inc., No. 3:08-CV-0904-L (BF), 2010 WL 3565418, at * 3 (N.D. Tex. Aug. 18, 2010) (quoting Wajcman v. Inv. Corp. of Palm Beach, 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009)).

In support of the validity of their tip pool, Defendants have proffered Floyd's affidavit testimony that the tips contained in the tip pool were "split solely between employees who customarily and regularly received tips."[31] Floyd also testified that, "At no time, has any manager, owner, including myself, or other employee of Reef Restaurant who is not a customarily and regularly tipped employee retained any tips from the tip pool."[32] The court further notes that the "Tip Reporting Agreement" set forth in Defendants' Welcome Packet specified that "tips received by all directly tipped employees . . . are subject to mandatory percentage contribution to

---

[31] Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 7.

[32] Id.

a tip pool as permitted by [§ 203(m) of the FLSA]."[33]

Opposing the validity of Defendants' tip pool, Plaintiff cites his opinion that Defendants did not distribute all of the tips in the tip pool to customarily and regularly tipped employees, but instead retained a portion of the tips for management, including Floyd.[34] However, Plaintiff has articulated no basis of personal knowledge to support this conclusory statement. See Fed. R. Civ. P. 56(e). Instead, Plaintiff directs the court's attention to his 2011 earnings summaries and weekly time card summaries, as well as to what appears to be a worksheet composed by an unidentified source summarizing and totaling the tip amounts contained in those documents.[35] Plaintiff contends that the earnings summaries and weekly time card summaries reveal an $8,643.23 discrepancy between Plaintiff's declared tips and paid tips. Plaintiff interprets this discrepancy as proof that Defendants improperly retained tips from the tip pool. The court disagrees.

Neither the worksheet nor the records upon which it relies are self-explanatory and they are not supported by an affidavit or declaration by someone with personal knowledge explaining their contents. Without such explanatory material, these documents are

---

[33] Doc. 40-4, Ex. D to Defs.' Mot. for Partial Summ. J., Welcome Packet.

[34] Doc. 46-1, Ex. A to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Aff., ¶ 11.

[35] See Doc. 46-2, Ex. B to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., Pl.'s Pay Recs.

without adequate foundation and do not amount to competent summary judgment evidence that the court may consider in resolving the pending motion. Regardless, even if Plaintiff had supported these documents with sworn testimony explaining their specific contents, the discrepancy between the tip amounts on Plaintiff's 2011 earnings summaries and his weekly time card reports does not support Plaintiff's claim of an invalid tip pool. This discrepancy, on its face, bears no relation to Defendants' tip pool, much less to Plaintiff's belief that management participated in that tip pool. Plaintiff's evidence therefore fails to rebut Defendants' evidence that only customarily and regularly tipped employees participated in the tip pool.

Thus, in the absence of competent summary judgment countering Defendants' evidence regarding the existence of a valid tip pool as defined under § 203(m) of the FLSA, the court finds that Defendants have established their entitlement to a tip credit. Accordingly, the court **RECOMMENDS** that summary judgment be **GRANTED** as to Defendants' entitlement to a tip credit.

**B. FLSA Retaliation**

The FLSA prohibits an employer from "discharg[ing] or in any manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). In the absence of direct evidence of retaliation, FLSA

15

retaliation claims are analyzed under the burden-shifting scheme first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008) (citing Kanida v. Gulf Coast Med. Personnel LP, 363 F.3d 568, 575 n.5 (5th Cir. 2004)) (applying McDonnell Douglas framework to FLSA retaliation claim).

Under this burden-shifting scheme, the plaintiff must first make out a prima facie case of retaliation. See id. (citation omitted); see also Johnson v. Manpower Prof. Servs., Inc., 442 F. App'x 977, 983 (5th Cir. 2011) (quoting Hagan, 529 F.3d at 624). In response, the defendant must articulate a legitimate, nonretaliatory reason for the action that adversely affected the plaintiff. See Hagan, 529 F.3d at 624. If the employer offers some evidence to support the proffered nonretaliatory reason for its conduct, the plaintiff must offer evidence of pretext. See id.

In order to succeed on a claim of retaliation, a plaintiff must first establish a prima facie case showing: "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." Id. (quoting Hagan v. Echostar Satellite L.L.C., No. H-05-1365, 2007 WL 543441, at *4 (S.D. Tex. Feb. 16, 2007) (unpublished)). With regards to causation, a close temporal proximity between the protected activity and the adverse employment

action may be sufficient to establish a causal connection. Everett v. Central Miss., Inc. Head Start Program, 444 F. App'x 38, 46 (5th Cir. 2011). However, a plaintiff must show that "but for" the protected activity, he would not have been subjected to the adverse employment action. Kanida, 363 F.3d at 580; see Palmer v. PSC Indus. Outsourcing, L.P., No. H-09-3194, 2011 WL 1230206, at *5 (S.D. Tex. Mar. 30, 2011) (quoting Kanida, 363 F.3d at 580) (unpublished).

Here, Plaintiff's FLSA retaliation claim is based on the allegation that Defendants terminated his employment upon learning about the filing of the present lawsuit. Defendants do not challenge Plaintiff's ability to establish the first two elements of a prima facie case of retaliation. Rather, Defendants contend that Plaintiff cannot establish the final element of his prima facie case, a causal link between Plaintiff's filing of the FLSA claims in this lawsuit and his alleged termination. Plaintiff, however, has produced competent summary judgment evidence, in the form of deposition testimony, that, on December 16, 2011, Floyd questioned Plaintiff as to his reason for filing this lawsuit three days earlier.[36] The parties concede that on that date, Plaintiff's employment with Defendants ended. Reading the evidence in the light most favorable to the nonmoving party, the court finds that

---

[36] The court notes that Defendants have produced no evidence countering this testimony.

the temporal proximity of Plaintiff's filing this lawsuit and his alleged termination, in conjunction with his deposition testimony, is sufficient to raise a question of fact as to causation. Accordingly, the court finds that Plaintiff has produced sufficient evidence to establish a prima facie case of retaliation under the FLSA.

Defendants also argue that, even assuming Plaintiff established a prima facie case of retaliation under the FLSA, his claim nonetheless fails because he cannot produce evidence showing that Defendants' proffered reason for Plaintiff's termination was a pretext for FLSA retaliation. In support of this argument, Defendants direct the court's attention to affidavit testimony indicating that Plaintiff was "belligerent and insubordinate with the owners and management on December 16, 2011," placing them in fear with his behavior.[37] According to Defendants' testimony, Plaintiff was again belligerent on December 19, 2011, and "verbally assaulted and threatened management."[38] Defendants further attest that Plaintiff stole items from the restaurant.[39] Although Defendants contend that they did not terminate Plaintiff's employment, but rather, Plaintiff abandoned his job,[40] they argue

---

[37] Doc. 40-1, Ex. A to Defs.' Mot. for Partial Summ. J., William Floyd's Aff., ¶ 10.

[38] Id. ¶ 11.

[39] Id.

[40] Defendants attest that "it was clear from [Plaintiff's] actions [on December 16 and December 19] that he did not intend to return to work." Id.

18

that Plaintiff's behavior and thievery would have provided sufficient cause to terminate Plaintiff. Defendants' proffered reasons are enough to meet their summary judgment burden on Plaintiff's retaliation claim. Because Defendants have rebutted the presumption of retaliation, the burden shifts to Plaintiff to establish pretext.

Plaintiff points to the temporal proximity between Plaintiff's filing this lawsuit under the FLSA on December 13, 2011, and Floyd's conversation with Plaintiff three days later, on December 16, 2011, which prompted Plaintiff's leaving work before his shift concluded. Plaintiff contends he was terminated during his December 16 conversation with Floyd, whereas Defendants contend that Plaintiff walked off the job after becoming belligerent with management. Resolving doubts in favor of the nonmoving party, the court finds Plaintiff's testimony that, during the same encounter on December 16, 2011, at which Floyd inquired about Plaintiff's filing this lawsuit, Floyd also told Plaintiff that he no longer worked at Reef Restaurant is sufficient to satisfy Plaintiff's evidentiary burden as to pretext. Accordingly, the court **RECOMMENDS** that summary judgment be **DENIED** on Plaintiff's FLSA retaliation claim.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **GRANTED IN PART, DENIED IN**

**PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 27th day of February, 2013.

Nancy K. Johnson
United States Magistrate Judge